**HURLBUT v. ROSS et al.**

**No. 4691.**

Court of Civil Appeals of Texas. El Paso.

Oct. 26, 1949.

Rehearing Denied Nov. 23, 1949.

Young & McCrea, Odessa, for appellant.

Blanton, Deaderick & McMahon, Odessa, for appellees.

McGILL, Justice.

In this suit, filed in the County Court of Ector County, appellees were plaintiffs and appellant was defendant. Plaintiff Mrs. Ora McNamara Ross, joined by her husband, C. O. Ross, sought to recover $550 and plaintiff E. A. Colston sought to recover $300 of a deposit of $850 deposited by Mrs. Ross with defendant F. J. Hurlbut as part payment of the purchase price of lot No. 10 in block No. 20 Scharbauer Place, an addition to the city of Odessa in Ector County. Trial to a jury resulted in answers to two special issues which on plaintiffs' motion were disregarded by the court and

judgment was rendered in favor of Mrs. Ross against defendant F. J. Hurlbut for $550, and in favor of Mrs. Ross and E. A. Colston against Hurlbut for costs.

E. A. Colston was the owner of the lot in question and listed it with defendant F. J. Hurlbut, a licensed real estate broker, for sale. Through the efforts of Hurlbut on September 23, 1947, E. A. Colston and wife Hazel Colston, as seller, entered into a written contract with Mrs. Ross, then Mrs. Ora McNamara, a widow, as purchaser for the sale and purchase of the lot. The portions of the contract deemed material in disposing of this appeal are:

"The purchase price is $8500.00, payable as follows: $3500.00 Cash (of which Purchase– has deposited with the undersigned Agent $850.00 as part payment, receipt of which is hereby acknowledged by said Agent): And the balance of $2650.00 cash to be paid, immediately upon acceptance of title and the balance of $5000.00 to be in the securing of a loan for said amount for ten years, at 5% interest. Purchaser is to be allowed to move into the house immediately and should said loan not be secured for this amount or for an amount acceptable to the purchaser, the purchaser agrees to pay rent at the rate of $60.00 per month for what time they are in said house, and does hereby agree to vacate just as soon as it is understood that a loan acceptable to them can not be secured.

\*  \*  \*  \*  \*  \*

"In the event of failure to furnish good and merchantable title, the purchase money hereby receipted for is to be returned to Purchaser upon the cancellation and return of this contract; or, Purchaser may enforce specific performance of same.

\*  \*  \*  \*  \*  \*

"Should the purchaser fail to consummate this contract as specified for any reason, except title defects, *Seller shall have the right to retain said cash deposit as liquidated damages for breach of this contract*, and shall pay to Agent *therefrom* the usual commission, or, Seller may enforce specific performance of this contract.

\*  \*  \*  \*  \*  \*

"Sellers agrees to pay F. J. Hurlbut, the sum of 5% commission for the handling of this sale."

Shortly after the contract was signed Mrs. McNamara occupied the property as her home. Hurlbut was unsuccessful in securing a loan for $5000 as specified in the contract. In answer to a special issue the jury found that Mrs. Ross entered into an oral contract with Hurlbut by which she agreed to purchase the property at a purchase price of $8000, provided Hurlbut obtained a loan of $3500 at 5½% interest, payable in equal quarterly payments over a period of ten years, to be evidenced by a note executed by her and her son-in-law, and provided that title objections raised by her attorney be met within a reasonable time. They also found that such objections were met within a reasonable time. These were the only issues submitted.

The evidence is undisputed that Mrs. Ross refused to consummate the purchase of the property, and vacated it during the latter part of February, 1948. While the suit was pending Hurlbut paid Colston $300 of the $850 deposited with him by Mrs. Ross as rental for the property under the terms of the written contract.

Appellant's points in substance complain of the trial court's action in disregarding the jury findings and rendering judgment as above stated.

■ Under Rule 301, Texas Rules of Civil Procedure, upon motion and reasonable notice the court may disregard the jury findings and render judgment non obstante veredicto if a directed verdict would have been proper; also it is elementary that if the judgment rendered is a correct judgment and the only judgment the court could have properly rendered under the pleadings and evidence, such judgment will not be reversed because of faulty or erroneous reasoning by which the court reached its conclusions.

■ The disposition to be made of the $850 deposited with Hurlbut is specifically provided for by the written contract. By its terms, if the purchase should be consummated such deposit should be applied to

the purchase price; if the seller should fail to furnish good and merchantable title such deposit should be returned to the purchaser upon cancellation of the contract; and if the purchaser should fail to consummate the contract for any reason except title defects "*Seller shall have the right* to retain said cash deposit as liquidated damages for breach of his contract and shall pay to the agent *therefrom* the usual commission". (Emphasis ours.)

It is apparent that only in the last contingency could the agent possibly have any interest in or claim to any part of the deposit, and then only in the event that the seller elected to exercise his right to retain such deposit as liquidated damages for breach of the contract, if such right existed. The general rule that a broker has a lien on earnest money received by him and may appropriate it to the extent of his commission (7 Tex.Jur. p. 529, Sec. 128) has no application where the party who agrees to pay the commission has no interest in such earnest money. It is quite clear from the record in this case that a bona fide dispute had arisen as to whether or not the purchaser had breached the contract. The seller by joining the purchaser in a suit on which he sought to recover only $300 of the deposit as payment of the $60 monthly rental stipulated in the contract, and in which he prayed that the purchaser recover the balance of $550 of the deposit, elected not to exercise his right to retain the entire deposit as liquidated damages for breach of the contract, if such right existed. Appellant could not force him to attempt to exercise his right to claim the deposit as liquidated damages when there was a bona fide controversy as to whether such right existed—in other words, force him into litigation the result of which would have been uncertain. The seller having elected to accept the agreed rental in full satisfaction of his rights under the contract, the agent had no interest in any part of the deposit. He had no claim against the purchaser for his commission, since she never agreed to pay him a commission; the contract specifically provided that the sellers agreed to pay him his commission. Ap-

pellant was a mere stakeholder of the deposit, and after the trade failed he held the fund as trustee, to be disposed of in accordance with the terms of the written contract. Murrah v. Shirley, Tex.Civ.App. 237 S.W. 307, loc. cit. 309.(1).

It is unnecessary to determine whether the written contract could be enlarged by parol testimony so as to show that under its terms the agent was obligated to secure the $5000 loan therein specified, or whether it could be so modified as to dispense with such loan and substitute in lieu thereof a $3500 loan at 5½% interest, to be evidenced by a note executed jointly by the purchaser and her son-in-law on an agreed reduction of the purchase price to $8000, or whether the seller is liable to the agent for his commission. We do not pass on these questions.

The judgment is correct, and it is in all respects affirmed.